UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JANE DOE**                                                              CASE NO: 21-1281
      **Plaintiff**

versus

**DR. PHILIP T. SOBASH**                                        **JURY TRIAL DEMANDED**
      **Defendant**

## COMPLAINT

Plaintiff Jane Doe ("Jane Doe" or "Plaintiff") brings this Complaint against Defendant Dr. Philip T. Sobaash ("Defendant") and alleges as follows:

## PRELIMINARY STATEMENT

1. Defendant, a physician who practices internal medicine, is a serial sexual predator who convinces unwitting young women into sending nude images to him and then posts the images with his victims' names and other personal identifying information onto notorious websites, inciting others to anonymously harass and attack his victims. He sells the images for personal gain. But, more than that, he enjoys harming his victims.

2. On January 24, 2021, Jane Doe, began a relationship with Defendant, who she met through an online dating site. As the relationship developed, Dr. Sobash asked Jane Doe for sexually explicit photographs of herself.

3. Jane Doe sent these photographs to him for his own use, and with the assurance that they would be kept private. She reminded Defendant of that term of her consent frequently.

4. Doe has discovered that from the very inception of their relationship, Defendant violated that consent by publishing the private photographs booths to embarrass Jane Doe and for

pecuniary gain, including selling the images commercially on a variety of websites without Jane Doe's knowledge or consent.

5. While Jane Doe consented to Dr. Sobash *possessing* the photographs, she never consented to their further distribution, and she most certainly never consented to their commercial distribution.

6. As a result of the privacy invasions, humiliation, and harassment which has haunted her for almost six months, Jane Doe has suffered extreme emotional distress.

7. Jane Doe is not Dr. Sobash's only victim. On actual knowledge, Dr. Sobash has at least two other victims who have filed suit against him for the same offenses. On information and belief, Dr. Sobash has multiple other victims, some of whom are underage.

8. The serial nature of Dr. Sobash's offenses compound the wrongful acts complained of and justify enhanced punitive damages, as Dr. Sobash will not be deterred from continuing his conduct otherwise.

## THE PARTIES

9. Plaintiff "Jane Doe" proceeds anonymously pursuant to the "sensitive and highly personal nature" exception to the general party-publicity rule. Plaintiff resides in New Orleans, Louisiana and is a domiciliary of Louisiana.

10. Defendant Philllip T. Sobash, MD resides in Batesville, Arkansas where he practices internal medicine at White River Health System, and on information and belief, also maintains a residence in Charleston, South Carolina. Dr. Sobash is not a domiciliary of Louisiana.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this base pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity jurisdiction), and 1367 (supplemental jurisdiction).

12.     Federal question jurisdiction is proper because this case involves application of 18 U.S.C. § 2257 to Dr. Sobash's conduct.

13.     Diversity jurisdiction is proper because the parties are residents of two different states, and the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendant because he frequently and repeatedly directed conduct specifically at a resident of this state and Plaintiff's claims arise directly from these contacts, and the harm Plaintiff suffered from this conduct was felt in this state. Dr. Sobash expressly aimed his conduct at a known resident of this state and judicial district, caused harm in this judicial district, and did so knowingly and not merely fortuitously.

15.     Venue properly lies in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

16.     In January of 2021, Jane Doe was in her early twenties and a graduate student enrolled in a Louisiana university.

17.     In January of 2021, Jane Doe was contacted on an online dating site by Defendant. The two took the relationship off the website and began to text each other.

18.     Over the course of their text conversations, Defendant requested that Jane Doe provide him with sexually explicit images.

19.     Dr. Sobash proposed giving Jane Doe small amounts of money for these photographs.

20.     Dr. Sobash agreed that the photos would be for his use only and that they would not be redistributed.

21.     Defendant sent payment to Jane Doe through Venmo under the name Philip Sobash.

22. Over the course of their relationship, and often, Jane Doe reminded Defendant to keep the photographs private. Defendant always responded with comforting statements of assurance that he would never share the photographs with anyone.

23. This created a "consent boundary" that Doe would send him intimate photographs, but they were to be kept confidential.

24. But for this consent boundary, Jane Doe would not have remained in the relationship with Dr. Sobash and would not have sent him her photographs.

25. Starting on or about January of 2021 through on or about March of 2021, Jane Doe sent Dr. Sobash a few hundred photographs and videos. During this same period of time, Dr. Sobash sent her gifts in terms of money and items.

26. Often, Dr. Sobash would make very unusual requests and would send her props like sex toys to photograph herself with and then he would direct her. Jane Doe had developed trust with Dr. Sobash and would usually indulge in his fetishes.

27. On the evening of March 4, 2021, Jane Doe received a direct message on Instagram from an unknown person who sent her a link to a forum where Defendant had published photographs of Jane Doe. He would then commercially sell photos of Jane Doe.

28. Upon a review of the forum, Jane Doe learned that Defendant had been responding to the requests of users for additional sexually explicit photos of Jane Doe, all during his communications with her. Upon information and belief, her poses were actually made-to-order requests that Sobash was getting from anonymous men online and then Dr. Sobash would pretend that they were his personal requests, and he manipulated the relationship he had with Jane Doe by making these specific requests as if they were merely his own personal fetishes.

29. Believing that the consent boundaries set in the relationship were being honored, Jane Doe would comply with Dr. Sobash's requests. She was unaware that she was being used as an unknowing commercial pornographic actress. Dr. Sobash was receiving requests for particular scenarios from his "customers," and he would then act as the producer of these pornographic images, made for commercial gain, and then he would distribute them to his customers.

30. Defendant has not followed record keeping provisions outlined for visual depictions of actual and simulated sexually explicit conduct outlines in 18 U.S.C.§§ 2257, despite the fact that he was acting as a commercial producer of pornography.

31. Jane Doe was not interested in being a commercial porn actress and was instead pursuing a career in medicine. Had Dr. Sobash properly requested the records, as required under federal law, Jane Doe would have been made aware of the fact that she was an unwitting commercial porn subject.

32. Jane Doe confronted Defendant because he was the only person to whom she had sent any of the photographs. Defendant lied and claimed he had been hacked. He further denied any distribution of these photographs.

33. As a result of the photographs becoming public with her contact information, Jane Doe received numerous unwelcome contacts on social media. Moreover, employees at her apartment building were sent messages and pictures of Jane Doe. Jane Doe had to relocate as a result.

34. The harassment became so unbearable that Jane Doe deactivated her Instagram account.

35. To this day, Dr. Sobash continues to request photos and even has sent her money on an unsolicited basis.

36. Upon information and belief, there are approximately 300 photos and videos of Jane Doe still available for purchase on multiple websites. Upon information and belief, Dr. Sobash continues to date to exploit other women using the same ruse.

37. Jane Doe suffered extreme emotional distress as a result of Defendant's deliberate actions. She suffers from severe anxiety and depression. She suffers intrusive thoughts that the strangers on the internet who have consumed her nude pictures and harass her and will harp her family. She feels hopeless about her career prospects because of the stalking by online harassers and the threats of sending the images to her employers for the rest of her life. Jane Doe is forced to spend hours a week scrolling for the images of herself and submitting requests for copyright infringement under the Digital Millennium Copyright Act (the "DMCA").

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Negligence Per Se (Violation of 18 U.S.C. § 2257)**

38. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

39. In order to combat child pornography and nonconsensual pornography, Congress passed 18 U.S.C. § 2257.

40. Dr. Sobash violated 18 U.S.C. § 2257 by commercially distributing pornography without the proper verification codes, which could only have been obtained from Jane Doe.

41. Dr. Sobash did not even seek, much less maintain, the records required under 18 U.S.C. § 2257.

42. Had he done so, it would have alerted Jane Doe to the fact that Dr. Sobash had chosen to violate the consent boundary established between the parties.

43. Dr. Sobash also did not provide any notice or statement on any copies of the photos or videos he commercially distributed required under 18 U.S.C § 2257(e).

44. Dr. Sobash's violation of 18 U.S.C § 2257 was knowing and deliberate.

45. Dr. Sobash's violation of 18 U.S.C. § 2257 was the actual and proximate cause of Plaintiff's injuries.

46. Plaintiff's injuries resulted from Dr. Sobash's nonconsensual pornography, which is an occurance of the nature which 18 U.S.C. § 2257 was designed to prevent.

47. As a victim of nonconsensual pornography, Plaintiff is one of the class of persons for whose protection 18 U.S.C. § 2257 was adopted.

48. As a direct and proximate result of Dr. Sobash's violation of 18 U.S.C. § 2257, Jane Doe has suffered substantial injuries, including harm to her reputation, emotional pain and suffering, and a loss in the quantity and quality of time spent with her friends and family.

**SECOND CLAIM FOR RELIEF**

**Invasion of Privacy - Generally**

49. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

50. Under Louisiana law, Jane Doe has a statutory right not to have her sexually explicit images and videos publicly distributed without her consent.

51. Jane Doe had a reasonable expectation that the nude images would remain private because Defendant explicitly assured her that the images were for her exclusive private use.

52. Defendant then posted and commercially sold the images and videos on websites without obtaining Jane Doe's consent.

53. The distributed images and videos exposed the intimate body parts of Jane Doe.

54.     By posting the images on the public internet, Defendant willfully coordinated the harassment of Jane Doe. Moreover, he provided all of the metadata including location information.

55.     As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme loss of reputation, emotional distress, shame, mortification, and hurt feelings.

### THIRD CLAIM FOR RELIEF

### Invasion of Privacy – Public Disclosure of Private Facts

56.     Plaintiff re-allleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

57.     Through the internet, with a reckless disregard to any consequences or for the fact that reasonable persons would find his actions highly offensive, Defendant publicly distributed and disclosed sexually explicit images and videos of Jane Doe without her consent and for commercial gain.

58.     These images and videos were of a highly private and personal nature, and their contents had not been known to the public prior to Defendant's actions.

59.     Jane Doe only provided sexually explicit images and videos to Defendant on the express understanding he would not distribute them to anyone else.

60.     Defendant knew that these images and videos were private.

61.     Given the facts at hand, unconsented disclosure of nude images would be highly offensive to the average person.

62.     Jane Doe's nude images were not of any reasonably legitimate concern to the public.

63. As a direct and proximate result on Defendant's blatant actions, Jane Doe has suffered substantial injuries, including harm to her reputation, emotional pain and suffering, and a loss in quantity and quality of time spent with her friends and family.

## FOURTH CLAIM FOR RELIEF

### Invasion of Privacy – Intrusion into Private Affairs

64. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

65. Jane Doe has the right to be secure from unreasonable intrusion upon her solitude, seclusion, and private affairs.

66. The nonconsensual publication of Jane Doe's nude images alongside her personal identifying information is an invasion of something that is entitled to be private or would be expected to be private.

67. Jane Doe actually expected the nude images and her personal identifying information to remain private because Defendant explicitly told Jane Doe the images were for his exclusive private use.

68. Instead, Defendant posted the images and Jane Doe's contact information onto the public internet.

69. By posting the images with Jane Doe's contact information, Defendant willfully orchestrated the harassment of Jane Doe.

70. As a result of the invasion, Jane Doe was harassed, and stalked.

71. The intrusion was physical in that the incoming contacts on social media and her phone were inescapable, intruding upon her life, no matter where she went.

72. The circulation of the images with her personal identifying information and the harassment of Jane Doe caused by Defendant's actions continues to date.

73. The invasion Jane Doe experienced was substantial and highly offensive or objectionable to a reasonable person.

74. As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme emotional distress and financial cost.

## FIFTH CLAIM FOR RELIEF

### Appropriation of Likeness

75. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

76. Under Louisiana law, Jane Doe has the right to be secure from an appropriation of her name or likeness.

77. Defended published images and videos containing Jane Doe's name and likeness.

78. The publication of Jane Doe's nude images and incitement of harassment were acts done by Defendant without Jane Doe's permission.

79. Jane Doe actually expected her nude images and personal information to remain private because Defendant promised Jane Doe he would not share this information (i.e. the images and personally identifying information).

80. Jane Doe was readily identifiable in the explicit images and information Defendant commercially sold and distributed.

81. Defendant knowingly published Jane Doe's images and videos with actual knowledge that Jane Doe did not consent to this publication.

82. Defendant's acts were done for the commercial benefit of somebody older than Jane Doe.

83. Defendant benefitted from the acts by scoring "wins" within the misogynistic incel[1] community where he published the images and earning clout.

84. Defendant further benefited – and continues to benefit – from whatever fetish his cruel and sadistic conduct may have satisfied.

85. There is a direct connection between Defendant's use of Jane Doe's images and videos and his commercial purpose, ad Defendant benefited financially by selling the images as commercial pornography.

86. The circulation of the images with Jane Doe's personal identifying information and the harassment of Jane Doe caused by Defendant continues to date.

87. As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme emotional distress and financial cost.

88. Pleading in the alternative, assuming Arkansas law applies, Arkansas also recognizes appropriation as a common law claim for relief. *See Olan Mills, Inc. of Tex. v. Dodd*, 234 Ark. 495, 353 S.W.2d 22 (1962) (adopting the claim); *see also* Restatement (Second) of Torts § 652C (1977).

## SIXTH CLAIM FOR RELIEF

**Appropriation of Name, Photograph, and Likeness (AR Code § 4-75-1109)**

89. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

---

[1] "Incel" is a pormeanteau for involuntary celibate and constitues and online subculture of men who are generally hostile toward women and blame women for not finding them sexually attractive.

90. Under ACA § 4-75-1104(a), Jane Doe has an individual property right in her name, photograph, or likeness.

91. ACA § 4-75-1104(a) provides that "a person who commercially uses the name, … photograph, or likeness or an individual is liable … for damages and disgorgement of profits, funds, goods, or services …"

92. Defendant published images and videos containing Jane Doe's name, photograph, and likeness.

93. The publication of Jane Doe's nude images and incitement of harassment were acts done by Defendant without Jane Doe's permission.

94. Jane Doe actually expected her nude images and personal information to remain private because Defendant promised Jane Doe he would not share this information (*i.e.* the images and personally identifying information).

95. Jane Doe was readily identifiable in the explicit images and information Defendant commercially sold and distributed.

96. Defendant knowingly published Jane Doe's images and videos with actual knowledge that Jane Doe did not consent to this publication.

97. Defendant's acts were done for the commercial benefit of somebody other than Jane Doe.

98. Defendant benefitted from the acts by scoring "wins" within the misogynist incel community where he published the images and earning clout.

99. Defendant further benefitted – and continues to benefit – from whatever fetish his cruel and sadistic conduct may have satisfied.

100. There is a direct connection between Defendant's use of Jane Doe's images and videos and his commercial purpose, as Defendant benefitted financially by selling the images as commercial pornography.

101. The circulation of the images with Jane Doe's personal identifying information and the harassment of Jane Doe caused by Defendant continues to date.

102. As a direct and proximate result of Defendant's conduct, Jane Doe suffered extreme emotional distress and financial cost.

103. Defendant, by his actions, has violated ACA § 4-75-1108.

104. Under ACA § 4-75-1109, Jane Doe is entitled to an award of all damages suffered as a result of Defendant's commercial use of her name, photograph, and likeness, as well as disgorgement of all profits attributable to his commercial use of her name, photograph, and likeness.

105. Under ACA § 4-75-1109, Jane Doe is entitled to an injunction restraining Defendant's unauthorized commercial use of her name, photograph, and likeness.

## SEVENTH CLAIM FOR RELIEF

### False Light

106. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

107. Jane Doe has the right to be secure from publicity that reasonably places Jane Doe in a false light before the public.

108. Defendant sold Doe's sexually explicit photographs to websites with the understanding that Doe's photographs would present Doe as a sexually promiscuous woman, commercial pornography model/actress, or an escort.

109. Defendant also presented Doe's sexually explicit photographs on websites with the intention of presenting Doe as a sexually promiscuous woman, commercial pornography model/actress, or an escort.

110. Jane Doe is not a sexually promiscuous woman, commercial pornography model/actress, or an escort.

111. Defendant, at all times when disclosing or implying these false or fictitious facts, had actual knowledge that they were false and would place Jane Doe in a false light, or acted with reckless disregard as to their truth or falsity or the false light in which they would cast Jane Doe.

112. Such an association is highly offensive to the ordinary reasonable person under the circumstances.

113. The publication or implication of these false or fictitious facts continues to date.

114. As a direct and proximate result of Defendant's actions, Jane Doe has suffered extreme emotional suffering, injury to her reputation, and economic loss.

## EIGHTH CLAIM FOR RELIEF

### Breach of Contract

115. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

116. In or around January 2021, Defendant and Jane Doe contractually agreed that she would take nude pictures and license them to Defendant for his exclusive and personal use in exchange for funds and items.

117. This agreement is valid and enforceable.

118. Jane Doe negotiated the price based on her reliance that the images were being created and provided solely for Defendant's personal use.

119. Defendant breached the contract by publishing the images onto the internet, especially onto an extremely popular site.

120. Defendant profited directly from his breach of this agreement by selling Jane Doe's images and videos to third parties.

121. As a direct and proximate result of Defendant's breach, Jane Doe suffered immeasurable damages.

## NINTH CLAIM FOR RELIEF

### Fraud

122. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

123. Defendant intentionally misrepresented a material fact to Jane Doe by telling her the images would stay private.

124. At the time of contracting for taking and licensing images, Defendant knew he had no intention of following through on the promise of keeping the images private.

125. Defendant intended that Jane Doe would rely upon the first statement that the images would stay private.

126. Jane Doe's reliance on Defendant's promise to keep the images private was reasonable.

127. Defendant has represented himself as an upstanding citizen and had gained Jane Doe's trust over a period of time by being a consistent and interested suitor and sharing what appeared to be personal information about his own life, including his name. Jane Doe's reliance on Defendant not sharing the images was even more reasonable because at the time she shared her

images, the nonconsensual sharing of nude images was criminally unlawful in at least 38 of the 50 United States.

128. As a direct and proximate result of Defendant's misrepresentation, Jane Doe suffered actual damages and harm in the form of harassment, emotional distress, damage to her online and offline reputation, and the violation of her most intimate privacy.

## TENTH CLAIM FOR RELIEF

### Fraud in the Inducement / Fraudulent Inducement

129. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

130. Defendant misrepresented the terms, quality, or other aspects of a contractual relation, venture, or other transaction.

131. Defendant's misrepresentation, that he would keep Jane Doe's images and personal identifying information private, led Jane Doe to ender into the agreement with Defendant of taking the images and sending them to Defendant. Jane Doe sent Defendant her images with a false impression or understanding of the risks, duties, or obligations she had undertaken.

132. Defendant told Jane Doe the nude images were for his consumption only.

133. Jane Doe only agreed to send the images to Defendant based on the representation he would indeed keep the images private.

134. Had Jane Doe known Defendant would publish the images and with her personal identifying information, she never would have agreed to send him her pictures, and certainly not for that price.

135. As a direct and proximate result of Defendant's misrepresentation, Jane Doe suffered actual damages and harm in the form of harassment, emotional distress, damage to her online and offline reputation, and the violation of her most intimate privacy.

## ELEVENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress / Outrage

136. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the preceding paragraphs.

137. Defendant's solicitation of Plaintiff's images and then publication of them alongside her personal identifying information onto a forum dedicated to inciting harassment and abuse was done with the specific intent of causing extreme emotional distress to Jane Doe, or with the reckless disregard for the probability of causing extreme emotional distress.

138. Defendant's conduct was extreme and outrageous.

139. Defendant's solicitation and publication of the images onto the internet directly caused Jane Doe's privacy violation and the harassment and torment from third parties publishing and sharing her images online.

140. Jane Doe experienced severe emotional distress as a direct and proximate result of Defendant's actions.

141. Pleading in the alternative, if Arkansas law applies, Arkansas recognizes intentional infliction of emotional distress as an outrage claim.

## TWELFTH CLAIM FOR RELIEF

### Civil Action by Crime Victim – ACA § 16-118-107(a).

142. Plaintiff is a person injured by reason of conduct of another person that would constitute a felony under Arkansas law. ACA § 16-118-107(a).

143. The predicate felonies are "unlawful acts regarding computers," prohibited by ACA § 16-118-107(a). Specifically, Defendant knowingly and without authorization obtained data – Plaintiff's photographs – and transferred the same to sexually explicit websites. ACA § 5-41-202(a)(4).

144. These actions were felonious because Defendant obtained and transferred these photographs through a scheme to defraud Plaintiff into creating and providing the photographs. ACA § 5-41-202(b)(2)(A).

145. Alternatively, these actions were felonious because Defendant received in excess of $500 in return for transferring Plaintiff's photographs to the websites, which money is rightfully the property of Plaintiff. ACA §§ 5-41-202(b)(2)(C); 4-75-1109.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A. General, special, and economic damages resulting from Defendant's wrongful acts;

B. Punitive damages;

C. An award of attorneys' fees and costs;

D. The creation of a constructive trust consisting of all funds Defendant has obtained due to his commercial distribution of Jane Doe's images;

E. An injunction restraining Defendant from any further unauthorized use of Plaintiff's name, photograph, or private likeness; and

F. Such other relief as this Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all so triable.

Dated: June 30, 2021.                                    Respectfully submitted,

/s/ Galen M. Hair
Galen M. Hair (La. Bar No. 32865)
Madison C. Pitre (La. Bar No. 38867)
3540 S. I-10 Serv. Rd. W.
Suite 300
Metairie, LA 70001
P: 504.684.5200
F: 504.613.6351
hair@hairshunnarah.com
pitre@hairshunnarah.com

Attorneys for Plaintiff
Jane Doe

Proposed summons has been filed with Complaint.